UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

LARRY A. KINSER, et al.,         )
                                 )
        Plaintiffs,              )
                                 )
    vs.                          )   Case No. 94-2282
                                 )
CBS CORPORATION,                 )
                                 )
        Defendant.               )

ORDER ON DEFENDANT'S MOTION FOR BILL OF COSTS
AS SUPPLEMENTED

This case is once more before the court for consideration of the motion for a bill of costs, as supplemented, by defendant CBS/Westinghouse. The court has considered the motion and its supplement, together with the plaintiffs' voluminous submissions in opposition, and the defendant's reply. For the following reasons, the motion for a bill of costs as supplemented is allowed in part, and the plaintiffs' objections are overruled except as ruled otherwise in this order.

Background

Larry Kinser worked for many years as a pipe fitter assigned to 100 or more job sites during his career. He began to smoke cigarettes as a teenager and smoked for many years. He was exposed to significant secondhand smoke both at home and at work. In 2000, Kinser was diagnosed with lung cancer and the upper lobe of his left lung was removed. At the time of trial, he was 79 years old, and had not had a recurrence of his cancer.

The plaintiffs sought to prove that Kinser's exposure to asbestos when he worked for four or five months in 1974 at the Zion, Illinois, powerhouse was a proximate cause of his lung condition. The defendant presented evidence that Kinser's lung condition was not proximately caused by exposure to asbestos from its turbines at the Zion powerhouse because its turbines were not insulated with asbestos. The defendant also presented evidence that Larry Kinser's lung cancer was not proximately caused by exposure to asbestos.

Jury selection and jury trial were scheduled to begin on Monday, January 6, 2014, at 9:00 a.m. However, severe weather and other unexpected problems delayed jury selection and jury trial until January 8, 2014. In addition, severe weather posed significant travel problems and delays for witnesses and experts, many of whom were from out of state. In addition, the court was concerned about the jurors' travel to and from the courthouse during inclement weather and did not keep to a 9-to-5 schedule. The plaintiffs presented their first witness on January 9, 2014. As always, the defendant's scheduling of its witnesses depends on the progression of the plaintiffs' case. As a result, there were a number of complications impacting the scheduling of

all of the witnesses. Each side had a remuda of experts on its witness list, all of whom traveled a significant distance in severe weather.

## Legal standards

Rule 54(d) of the Federal Rules of Civil Procedure provides that "costs – other than attorney's fees – should be allowed to the prevailing party." Fed. R. Civ. P. 54(d); *see also* CDIL-LR 54.1. The costs recoverable under Rule 54(d) include: (1) fees of the clerk and marshal; (2) fees of the court reporter for all or any part of the stenographic transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for use in the case; and (5) docket fees. 28 U.S.C. § 1920; *see also Weeks v. Samsung Heavy Indus. Co. Ltd.*, 126 F.3d 926, 945 (7th Cir. 1997) (setting forth categories of allowable costs). The defendant seeks clerk's fees ($226.00); transcription fees ($12,558.35); printing ($1,223.30); witness fees ($5,834.78); and exemplification and copying costs ($28,787.64). The total is $48, 630.17.

The law presumes that the prevailing party in litigation "will recover costs, and the losing party bears the burden of an affirmative showing that taxed costs are not appropriate." *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005); *see also Rivera v. City of Chicago*, 469 F.3d 631, 634 (7th Cir. 2006). "The presumption in favor of awarding costs to the prevailing party is difficult to overcome, and the district court's discretion is narrowly confined – the court must award costs unless it states good reason for denying them." *Weeks*, 126 F.3d at 945. The procedure for reviewing a bill of costs is straightforward; the district court "simply needs to determine that expenses are allowable cost items, and that the amounts are reasonable and necessary." *Deimer v. Cincinnati Sub-Zero Prods., Inc.*, 58 F.3d 341, 345 (7th Cir. 1995).

The plaintiffs object to the amount sought for transcription fees, printing, witness fees, and exemplification and copying costs. There is no objection to the $226 attorney admission fee of Paula Burlison, Esq.

## Transcription fees

The plaintiffs object to the transcription fees sought for the following reasons: the defendant did not need the full trial transcript and the cost of daily transcripts was unreasonable; the defendant seeks reimbursement of deposition costs to which it is not entitled; and the cost of video depositions of Arthur Kleinrath should be prorated because he testified about a number of Commonwealth Edison facilities, only one of which was relevant to this case.

First, the court finds that daily trial transcripts were necessary, considering the length of the trial and the complex testimony of most of the expert witnesses. The defendant paid a per-page rate of $6.05 for daily transcripts, $4.85 for expedited transcripts, and $3.65 for the remaining pages, totaling $7,920.85. The plaintiffs contend that the defendant could have asked

for far fewer pages at a much lower cost, not to exceed $500. They assert that only three or four short excerpts were quoted at trial, and only a handful of pages were used to prepare post-trial motions.

In this case, the plaintiffs began their case in chief with highly complex expert testimony. The defendant's use of daily transcripts to prepare adequately for cross-examination and its own experts' testimony was reasonable and necessary. Had this trial been shorter or less complex, the court would agree that a more selective approach to ordering trial transcripts could have been appropriate. However, the plaintiffs chose their strategy, and cannot now complain that the defendant's response in kind was unwarranted.

The plaintiffs also argue that requests for e-transcripts, condensed transcripts, and shipping and transcript exhibits should be denied. They do not direct the court's attention to the amount of those charges, nor specify the witnesses for whom such costs were incurred. The defendant has attached copies of invoices showing the amount it was billed by the court reporting service, and has reduced some of the costs sought from the plaintiffs. Compare d/e 159-2, pp.2-3, Actual Cost Column to Cost Requested Column. The plaintiffs also argue that they ordered an original transcript of certain depositions, so the defendant should be limited to $0.90 per page for a copy of the transcript. However, when the losing party chose the court reporter, the prevailing party is often entitled to its actual cost. *See, e.g., Stephens v. DeWitt County*, Case No. 11-3162, d/e 95 (C.D. Ill. Nov. 21, 2013). The plaintiffs do not state who chose the court reporter. Therefore, they have not provided sufficient information to challenge the amount sought.

The plaintiffs argue about the propriety of awarding the full cost sought for certain other depositions, including a second copy of certain deposition transcripts, and four days of the video deposition of Arthur Kleinrath, who testified about various Commonwealth Edison facilities. The plaintiffs ask for a proration of his depositions to reflect the small percentage of his testimony unique to this case. Those arguments – and others – in opposition to the transcription costs sought have been thoroughly reviewed by the court and rejected rather than overlooked.

Transcription fees of $12,558.35 are allowed.

Printing, exemplification, and copying costs

The plaintiffs object to the costs of printing, exemplification, and copying, stating that the total cost is not reasonable nor is it necessary, and the cost per page is not reasonable. Law firm Foley & Mansfield charged $0.20 per copy (a rate that, in the court's experience, is reasonably charged to clients by counsel in this area), totaling $5,873.60. The costs of outside copying by Mi-Te Printing ($7,848.84), and Ricoh USA ($2,782.20) were charged at $0.06 per page. Mi-Te's cost to print documents from a jump drive, at $0.20 per page, is also reasonable. (Ricoh's delivery cost of $4,073.58 is without explanation and is disallowed.) The charge from Viking Printing, at $0.10 per page for black and white copies and $0.45 for color copies, is also reasonable. (Viking's overtime charge of $400 is also without explanation and is disallowed.) Staples' charged $0.025 for some copies and $0.07 for others ($1,955.58), which is reasonable.

The plaintiffs contend that multiple copies of the same document were not reasonably necessary. However, the defendant's trial attorneys were located in Chicago, Illinois; Columbia, South Carolina; and Richmond, Virginia. To prepare for trial, it was reasonably necessary for each of them to have copies of the documents, and to have a clean copy of the documents for trial.

The plaintiffs also contend that there was no reason to present exhibits by displaying a paper copy, because they could have displayed documents through use of a laptop and the court's electronic equipment. They also assert that there was no need for them to duplicate plaintiffs' exhibits for use in the defendant's case in chief. Electronic display is one way, but it is not the only way to display exhibits, and the court will not second-guess or penalize the defendant for the method chosen to present its evidence. The parties often highlighted or wrote on their copies of the exhibits as they examined and cross-examined witnesses, and it is reasonable for parties to present their case using a copy without opposing counsel's notes and highlights. (The plaintiffs' counsel's highlighting arose in a most unfortunate way on the last day of trial.[1])

The plaintiffs also argue that there was no need for so many copies, only a handful of which were used at trial. The plaintiffs' exhibit list, d/e 138-3, is 86 pages long, has 618 marked exhibits, and identifies pages upon pages of other potential exhibits. Had plaintiffs' counsel crafted his exhibit list more carefully, the defendant's copying costs might have been less. It is too late to complain that the defendant's copying costs were not reasonably necessary.

For the foregoing reasons, the court reduces the fees for printing, exemplification, and copying by $4,473.58, and awards costs of $25,537.46.

<u>Witness fees</u>

Each side had a remuda of experts on its witness list. Not all experts were called; however, the parties spent significant time eliciting and discrediting expert testimony.

The plaintiffs oppose the sum of $5,834.78 for witnesses Doug Ware, Robert Jones, M.D., and Thomas Howard, M.D., citing 28 U.S.C. § 1821(c)(1). A witness "shall utilize a common carrier at the most economical rate reasonably available. A receipt or other evidence of actual cost shall be furnished." 28 U.S.C. § 1821(c)(1).

The plaintiffs' contention that the defendant's claim for expenses is unreasonable is risible when the obvious expense of the plaintiffs' onslaught of expert witnesses is considered.

---

[1] *See* Trial Transcript, d/e 176, pertaining to the court's discussion with counsel about a report from court security that plaintiffs' counsel, Robert McCoy, went through the stack of plaintiffs' admitted exhibits with a highlighter in hand. Mr. McCoy represented to the court that he did have a highlighter in his hand, but he did not mark any exhibits.

First, the plaintiffs argued that no receipt or other evidence of actual cost was furnished. The witnesses each provided an expense report, which the defendant claims is sufficient as "other evidence of actual cost." Additional documentation was attached to the reply. *See* d/e 177.

The plaintiffs misapprehend the request for Doug Ware's expenses. Although Ware's business expense statement, d/e 159-2, p.21, itemizes travel costs for a trip from his home in Winter Park, Florida, to Richmond, Virginia, on January 2, 2014; a trip to Champaign/Urbana, Illinois, for trial on January 10-16, 2014; and another trip to Champaign/Urbana on January 20-22, 2014, the bill of costs seeks reimbursement only for the third trip, during which Ware testified at trial. His costs for that trip, including airfare, two nights of accommodations, meals, and rental car, are reasonable.

Dr. Jones traveled from New Orleans, Louisiana, to testify at trial. He traveled business select class ($842), which is unsurprising; he made his reservations on January 13, to travel to Chicago (Midway) on January 15 and return to New Orleans on January 16 at a time when flights were routinely cancelled or delayed. His rental car expenses were high, but renting a large SUV to drive round trip from Midway Airport was not unreasonable, considering the distance and road conditions. Dr. Jones's hotel, meal, and incidental expenses were reasonable.

Dr. Howard's travel expenses are more troublesome. He, too, made his flight reservations a few days in advance, traveling first class from Melbourne, Florida, to Indianapolis, Indiana ($2,327.60) and from there to and from Champaign/Urbana by car service ($731.12). His hotel, meal, and incidental expenses were reasonable. The defendant suggests that if the court were to find the airfare unreasonable, a sum of $604 is a reasonable amount. Consequently, the court reduces Dr. Howard's costs by $1,723.60 to account for the difference in airfare. Dr. Howard experienced flight delays, arrived in Indianapolis late on the night of January 16, and met with counsel early on January 17 before beginning his testimony at 9:00 a.m. *See* Trial Transcript, d/e 173. Dr. Howard returned to Melbourne later on January 17. Under the circumstances, the court does not find the car service charge to be unreasonable.

It bears repeating that the weather during the period in question was most challenging. Each of the defendant's experts lives in a warm climate and may not have any recent experience driving in wind, snow, and ice on unfamiliar roads through vast open areas of farmland. Winter days are short, and traveling under such circumstances in the dark can be trying, even for those who are used to such conditions. Under the circumstances, the court is more lenient in its analysis of what is reasonable and necessary in this case. Further reductions would have been justified had the case been tried during the summer when better weather and longer daylight hours do not pose the same dangers.

For the above reasons, the court does not reduce Mr. Ware's or Dr. Jones's travel expenses. The court reduces Dr. Howard's travel expenses by $1,723.60.

## CONCLUSION

For the foregoing reasons, the motion for a bill of costs [159] is granted in part and denied in part. The defendant's bill of costs is reduced by the sum of $6,197.18. The court allows clerk fees of $226; transcription fees of $12,558.35; printing, exemplification, and copying costs of $25,537.46; and witness fees of $4,111.18. Costs under 28 U.S.C. § 1920 are awarded to the defendant and taxed against the plaintiffs in the amount of $42,432.93 as part of the judgment in this case.

ENTER this 16TH day of April 2014.

**s/Harold A. Baker**
_____
Harold A Baker
United States District Judge